UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEMOKALAM NJEMANZE,

                              Movant,

          -v.-

UNITED STATES OF AMERICA,

                              Respondent

20 Civ. 5359 (KPF)
18 Cr. 117-7 (KPF)

ORDER

KATHERINE POLK FAILLA, District Judge:

The Court is in receipt of Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In reviewing the motion papers, the Court is concerned that Movant, while researching and drafting his motion, inadvertently relied on sources that may not apply to his case. In order to advance his best arguments, Movant is invited to file an amended motion. Movant is encouraged to review the transcripts from his sentencing and plea (attached here), as well as to cite Second Circuit precedent (which is binding on this Court), instead of Fifth Circuit precedent (which is not binding).

Movant is invited to file an amended motion on or before August 31, 2020. Should he decline to file an amended motion and choose to proceed with his current motion, the Court requests that Movant notify the Court as soon as possible so that the Court may set a briefing schedule.

SO ORDERED.

Dated:    July 16, 2020
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

A copy of this Order was mailed by Chambers to:

Kemokalam Njemanze
Reg. No. 86803-054
Federal Correctional Institution
P.O Box 3850
Adelanto, CA 92301

J4BKNJEP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          18 CR 117 (KPF)

5  KEMOKALAM NJEMANZE,

6            Defendant.

7  ------------------------------x

8                                       New York, N.Y.
                                        April 11, 2019
9                                       4:10 p.m.

10 Before:

11                HON. KATHERINE POLK FAILLA,

12                                       District Judge

13
                             APPEARANCES
14

15 GEOFFREY S. BERMAN,
        United States Attorney for the
16      Southern District of New York
   ROBERT B. SOBELMAN
17      Assistant United States Attorney

18 TODD A. SPODEK
        Attorney  for Defendant
19

20 ALSO PRESENT:

21 GREGORY HOLM, Secret Service
   LISA CHAN, Pretrial Services
22

23

24

25

J4BKNJEP

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. SOBELMAN:  Robert Sobelman, for the United States. |
| 3 | I'm joined at counsel table by Special Agent Gregory Holm, of |
| 4 | the United States Secret Service.  Good afternoon, your Honor. |
| 5 | THE COURT:  Good afternoon. |
| 6 | MR. CHAN:  Good afternoon, your Honor.  Lisa Chan, for |
| 7 | pretrial. |
| 8 | THE COURT:  Thank you very much.  I have your report, |
| 9 | sir. |
| 10 | MR. SPODEK:  Good afternoon, your Honor.  Todd Spodek, |
| 11 | for Mr. Njemanze. |
| 12 | THE COURT:  Okay.  And may I address your client |
| 13 | directly? |
| 14 | MR. SPODEK:  Yes, your Honor.  Of course. |
| 15 | THE COURT:  Thank you. |
| 16 | Sir, good afternoon.  Tell me, first, how do you |
| 17 | pronounce your last name? |
| 18 | THE DEFENDANT:  Njemanze. |
| 19 | THE COURT:  Njemanze, am I saying it correctly? |
| 20 | THE DEFENDANT:  Yes. |
| 21 | THE COURT:  Mr. Njemanze, it is my understanding, sir, |
| 22 | that this is your first appearance in federal court.  Is that |
| 23 | correct? |
| 24 | THE DEFENDANT:  Yes, ma'am. |
| 25 | THE COURT:  I understand. |

J4BKNJEP

1          So there are several things we are going to do today,

2     and if at any time what I am saying to you doesn't make sense,

3     just let me know, and I will clarify things for you.

4          As you may have figured out, I'm Katherine Failla, I'm

5     a United States district judge, and it is my understanding that

6     you have agreed, or consented, to the waiver of indictment and

7     the allowing of a filing of an information.

8          Is that correct, sir?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  And so I'll talk to you about that a

11     little bit in a moment, but because of that, I want to talk to

12     you about what happened now that your case has been assigned to

13     me.

14          Let me begin by asking some very preliminary

15     questions.

16          So far, sir, do you understand everything that I have

17     said?

18          THE DEFENDANT:  Yes, I do, ma'am.

19          THE COURT:  Okay.

20          Could I understand from the government, please, the

21     date and the time of the arrest?

22          MR. SOBELMAN:  Mr. Njemanze was arrested --

23     self-surrendered today at 10:00 a.m.

24          THE COURT:  Surrendered at 10:00 a.m.  Thank you very

25     much.

J4BKNJEP

1          Mr. Njemanze, the purpose of this proceeding is to

2     advise you of your rights, to talk to you about your right to

3     counsel, to determine whether there are circumstances that

4     would allow you to be released on bail, and then what's a

5     little bit different about this case is, based on the

6     conversations your attorney has had with the government, it is

7     my understanding that you wish to have the filing of the

8     information, and you wish to enter a guilty plea to that

9     information.

10          So that's a lot of things happening this afternoon,

11     but are you aware of -- and is that what you wish to happen?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  It is my understanding -- Mr. Spodek is

14     retained by you, sir, as counsel?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Mr. Spodek, let us talk.

17          MR. SPODEK:  Sure.

18          THE COURT:  Because I believe you've appeared in an

19     earlier case --

20          MR. SPODEK:  Yes, your Honor.

21          THE COURT:  -- that's somehow related to this matter.

22          So let me understand your view, sir, and then the

23     government's views about the inquiry that I should undertake of

24     Mr. Njemanze to make sure he's aware of any potential

25     conflicts.

J4BKNJEP

1            MR. SPODEK:  Sure.

2            Earlier on in a case, the case with the same

3      individuals involved, I did represent a defendant in that

4      matter for plea purposes.  I'm no longer representing him.  My

5      investigation with my prior client, there was no overlap

6      between these two individuals, they never spoke, they don't

7      know of each other, there's no information that either of them

8      have as to the other and/or their role, or capacity, or

9      anything.

10           I also spoke with Mr. Njemanze about the same

11     situation, and he assured me that he didn't know my other

12     client and didn't have any other information about him and/or

13     his involvement in this or knew anything about him.  So I

14     explained to him that there potentially could be a conflict and

15     made sure that he understood that, and he said he had no issue

16     whatsoever.  We talked about this previously with the

17     government, and I understand, just for precaution purposes,

18     your Honor, to let your Honor know about it, and you can

19     inquire certainly of my client.

20           THE COURT:  Thank you.

21           Mr. Sobelman, do you have the same perspective, sir?

22           MR. SOBELMAN:  Yes, your Honor.  The government's not

23     aware of, aside from their involvement in an overall scheme,

24     any personal interaction or knowledge of Mr. Spodek's prior

25     client and Mr. Spodek's current client of each other, and, in

J4BKNJEP

1    our view, there is, I guess, a theoretical potential conflict

2    that we wanted to make sure the defendant and the Court is

3    aware of, but we don't believe there's any actual conflict at

4    all.

5              THE COURT:  So you're not asking me, neither side is

6    asking me, for a full robust Curcio proceeding, more of a more

7    preliminary inquiry; is that correct?

8              MR. SOBELMAN:  That's correct, your Honor.

9              THE COURT:  All right.

10             Again, Mr. Spodek, may I address your client directly?

11             MR. SPODEK:  Yes, of course, your Honor.

12             THE COURT:  Thank you.

13             Mr. Njemanze, I want to make sure you understand the

14   conversations that I was just having with your attorney and

15   with the attorney for the government.  Because Mr. Spodek

16   represented another individual involved in this matter at an

17   earlier proceeding, the concern that one might have is that you

18   might not have his undivided attention or his undivided

19   representation.  What I understand from the representations

20   that have been made to me, by him and by the government, is

21   that this is one of those circumstances in which you and the

22   other individual may have been involved in this matter, but

23   didn't know each other, had no overlap of actions, and,

24   therefore, information that Mr. Spodek might have that is

25   specific to that prior representation would not be shared with

7

J4BKNJEP

1    you, would not aid you, would not harm you, would not do

2    anything.  And so I will ask you, sir:  Have you spoken with

3    Mr. Spodek about his prior representation?

4              THE DEFENDANT:  Yes, ma'am, I have.

5              THE COURT:  Were you listening today when he and the

6    prosecutor discussed their understanding of the knowledge that

7    he would have from that prior representation?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Is that your understanding as well, that

10   he knows something about representing this other person, and

11   knows something from representing you, and doesn't have any

12   overlap between the two?

13             Is that your understanding, sir?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  So with that in mind, do you waive any

16   conflicts that might otherwise adhere anything that would

17   result from his prior representation?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  I understand that.  I don't believe there

20   is a conflict, but I do think you and I both have the same base

21   of knowledge about it.  You have the right, of course, sir, to

22   waive it, and I understand that you're so doing.

23             Again, because I believe in making sure everything is

24   out there, the concern that would be had is that there might be

25   information that he has about you or information that he might

J4BKNJEP

1    have about that other client that might impact his

2    representation of the other of you.

3              Do you have that understanding, sir?

4              THE DEFENDANT:  Yes, ma'am, I do.

5              THE COURT:  And I'm now understanding that he no

6    longer represents this other individual, so information from

7    you won't be used in any respect, and the information that he

8    has from that prior representation has no bearing on your case.

9              Do you understand that, sir?

10             THE DEFENDANT:  Yes, ma'am, I do.

11             THE COURT:  Okay.  Thank you very much.  Now I

12   understand that.

13             So, Mr. Spodek, you will remain his retained counsel

14   in this case.

15             Mr. Sobelman?

16             MR. SOBELMAN:  Yes, your Honor, just for clarity of

17   the record, I don't think any of us actually said the name of

18   the other client.

19             THE COURT:  No.  Do you wish me to?

20             MR. SOBELMAN:  I actually do, just to make sure we're

21   all talking about the same person.

22             THE COURT:  Of course.

23             MR. SOBELMAN:  The individual is Okechukwu Peter

24   Ezika, just for the record, so that when we all refer to the

25   prior person, the prior client, we can make sure we're talking

J4BKNJEP

1    about the same person.

2              THE COURT:  It is very wise that you are doing that.

3    May I ask you, please, for the benefit of the reporter and the

4    judge, to spell the first name of that individual.

5              MR. SOBELMAN:  I believe it's O-k-e-c-h-u-w-k-u, but

6    his name is also reflected on the docket in this case.

7              THE COURT:  Okay.  Thank you very much.

8              You understood, sir -- and let me ask, please:

9    Mr. Njemanze, you had the ability to speak with Mr. Spodek

10   about the name of this individual?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  And when you heard the name, it wasn't

13   somebody you knew?

14             THE DEFENDANT:  No, ma'am.

15             THE COURT:  I appreciate that.  Thank you.

16             And, Mr. Sobelman, do you believe that's enough

17   inquiry in that matter?

18             MR. SOBELMAN:  Yes, your Honor.

19             THE COURT:  Thank you.

20             Now, Mr. Njemanze, you have the right to remain

21   silent.  What I mean by that is, you're not required to make

22   any statements here, any statements to law enforcement

23   authorities, and if you've started to make a statement, you can

24   stop making the statement.  If you've already made the

25   statements, you don't have to say any more, but if you do make

J4BKNJEP

1    a statement, that statement might be used against you at trial

2    or at another proceeding.

3              Are you aware of that, sir?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  It is your intention today, however, as I

6    understand it, to waive indictment and to enter a plea of

7    guilty to the information, the superseding information; is that

8    correct?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Let me talk to you about that, please,

11   sir.

12             I have a number of questions to ask you, and let me

13   explain the purposes that these questions serve.

14             The first thing that I want to do -- and I believe I

15   understand this already from having had five minutes of

16   discussions with you -- but I want to make sure that you are

17   competent to do each of these things that you wish to do today,

18   so I will ask you questions in that regard.  And if, in fact,

19   you are competent, then I'll ask you some questions about your

20   rights to waive indictment and, separately, about the rights

21   that you have with respect to pleading guilty.

22             Just as I said at the beginning of this, sir, the most

23   important thing is that you understand what's going on.  If

24   anything is unclear to you, please let me know.  All right,

25   sir?

J4BKNJEP

1           THE DEFENDANT:  Okay, ma'am.

2           THE COURT:  Thank you.

3           Ms. Noriega, can you, please, swear in Mr. Njemanze.

4           THE DEPUTY CLERK:  Yes, your Honor.

5           (Defendant sworn)

6           THE DEPUTY CLERK:  Thank you.

7           Please state your name for the record.

8           THE DEFENDANT:  Njemanze, Kemakolam.

9           THE COURT:  May I ask you, please, sir, to spell your

10  name?

11          THE DEFENDANT:  Last name N-j-e-m-a-n-z-e, first name

12  Kemakolam, K-e-m-a-k-o-l-a-m, middle name Gozie, G-o-z-i-e.

13          THE COURT:  Thank you very much.  And you are welcome

14  to be seated.

15          Let me just pause for a moment.  Let me ask the

16  pretrial services officer:  It would be my preference to go

17  through the plea proceeding before addressing the issue of bail

18  because I think it would impact it, but I don't want to

19  complicate your entire afternoon.  If the parties agree to take

20  it out of order, I can do the bail proceedings at this time.

21          MR. CHAN:  Whatever is your wish, your Honor.  I'm

22  fine to stay.

23          THE COURT:  Okay.  Then I thank you very much for

24  doing that.  Thank you.

25          Mr. Njemanze, how old are you, sir?

J4BKNJEP

1          THE DEFENDANT:  Thirty-five, ma'am.

2          THE COURT:  Thirty-five.  Thank you.

3          I should let you know the significance of my having my

4     deputy place you under oath is that if you answer any of the

5     questions that I'm about to ask you falsely, you could be

6     prosecuted for a separate offense.  That offense is known as

7     perjury.

8          Do you understand that, sir?

9          THE DEFENDANT:  Yes, ma'am, I do.

10          THE COURT:  Mr. Njemanze, how far did you go in

11     school?

12          THE DEFENDANT:  Bachelor's in engineering.

13          THE COURT:  Was that here in the U.S. or in Nigeria?

14          THE DEFENDANT:  Back in Nigeria.

15          THE COURT:  Sir, have you ever been treated or

16     hospitalized for any form of mental illness?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Were you now, or have you recently been,

19     under the care of a doctor or a psychiatrist?

20          THE DEFENDANT:  Psychiatrist?  No, ma'am.

21          THE COURT:  Let me ask the other question.  It's my

22     fault for combining them.

23          Have you recently been under the care of a doctor,

24     sir?

25          THE DEFENDANT:  Yes, ma'am.

J4BKNJEP

1          THE COURT:  Are you comfortable discussing the medical

2     condition on the record?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Could you tell me, please, the reasons --

5     were you seeing a doctor for a regular checkup or for something

6     more specific?

7          THE DEFENDANT:  I had heart problems a couple of

8     months back, so I went -- I had this chest pain, I went to the

9     hospital, and they had to -- they checked my troponin, they

10    said it was high, my blood pressure was high, so they admitted

11    me in the hospital.  I was there about six days or thereabout.

12    Then, two days after I was admitted, they had to rush me -- I

13    underwent a heart procedure.

14         THE COURT:  You were having a heart attack, sir, or a

15    heart condition?

16         THE DEFENDANT:  I almost had a heart attack.

17         THE COURT:  I see.

18         THE DEFENDANT:  That's what the doctor said.  So,

19    afterwards, he placed me on heart attack prevention

20    medications.

21         THE COURT:  Blood thinners or something of that type,

22    sir?

23         THE DEFENDANT:  Yes, blood thinners as well, yes,

24    ma'am.

25         THE COURT:  Okay.

J4BKNJEP

1          When was the last time you were hospitalized for your

2     heart conditions?

3          THE DEFENDANT:  April 2018.

4          THE COURT:  About a year ago?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Are you continuing to take medication --

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  -- for your heart conditions?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  About how many medications are you taking,

11     sir?

12          THE DEFENDANT:  About five.

13          THE COURT:  And do you know what they are?  And it's

14     fine if you don't.  You can --

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Tell me, please, what they are and speak

17     slowly, because I want to make sure I understand them.

18          THE DEFENDANT:  Hydrochlorothiazide, Coreg,

19     amlodipine, atorvastatin, and aspirin.

20          THE COURT:  Each of those is designed to aid your

21     heart's -- the issues that your heart was having?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do these medications, alone or in

24     combination, impact your ability to see, hear, or understand

25     what's going on in the courtroom this afternoon?

J4BKNJEP

1                   THE DEFENDANT:  No, ma'am.

2                   THE COURT:  Other than the medical attention you

3       received for your heart, have you recently been under the care

4       of a doctor for any other reason?

5                   THE DEFENDANT:  No, ma'am.

6                   THE COURT:  Have you ever been treated or hospitalized

7       for any form of addiction, including drug or alcohol addiction?

8                   THE DEFENDANT:  No, ma'am.

9                   THE COURT:  In the last two days, other than the

10      medications we've just talked about for your heart, have you

11      taken any drugs, medicine, or pills of any type?

12                  THE DEFENDANT:  No, ma'am.

13                  THE COURT:  In the last two days, have you consumed

14      any alcoholic beverages?

15                  THE DEFENDANT:  No, ma'am.

16                  THE COURT:  Is your mind clear today, sir?

17                  THE DEFENDANT:  Sorry?

18                  THE COURT:  Yes.  Is your mind clear today?

19                  THE DEFENDANT:  Yes, ma'am.  Yes.

20                  THE COURT:  Do you understand what's happening in this

21      courtroom this afternoon?

22                  THE DEFENDANT:  Yes, ma'am, I do.

23                  THE COURT:  And let me, please, speak with your

24      attorney.

25                  Mr. Spodek, have you had enough of an opportunity to

J4BKNJEP

1    discuss this matter with your client?

2              MR. SPODEK:  Yes, your Honor.

3              THE COURT:  Do you believe he understands the rights

4    that he has, and that he would be waiving, if he decided to

5    proceed by way of information and if he decided to plead guilty

6    to that information?

7              MR. SPODEK:  Yes, your Honor.

8              THE COURT:  Do you believe he understands these

9    proceedings this afternoon?

10             MR. SPODEK:  Absolutely.

11             THE COURT:  Do you have any doubt as to his

12   competence?

13             MR. SPODEK:  No doubts, your Honor.

14             THE COURT:  Thank you.

15             Mr. Sobelman, the same question:  Do you have any

16   doubt as to Mr. Njemanze's competence to waive indictment, if

17   he wishes to do so, or to plead guilty, if he wishes to do so?

18             MR. SOBELMAN:  No, your Honor.

19             THE COURT:  Thank you for letting me know.

20             Mr. Njemanze, based on your representations and your

21   discussions with me this afternoon, based as well on my

22   observations of your demeanor here in court, based on the

23   conversations that I've just had with your attorney and with

24   the attorney for the government, I find that you are fully

25   competent to waive indictment, if you wish to do so, and to

J4BKNJEP

1  enter a plea of guilty, if you wish to do so.

2            I'm going to ask you, sir:  Do you have a copy of a

3  document in front of you?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  I just want you to let me finish my

6  question.  And I understand you're trying to be very helpful,

7  but I want the record to be clear.

8            I have a document that, in the upper right-hand

9  corner, says "Waiver of Indictment."  Do you have a similar

10  document, sir?

11            THE DEFENDANT:  Yes, ma'am, I do.

12            THE COURT:  The copy that I have has three signatures

13  on it.

14            Does yours, as well, have three signatures?

15            THE DEFENDANT:  Yes, ma'am, it does.

16            THE COURT:  Is one of those signatures yours?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  I'm going to mark my copy as Court Exhibit

19  1, just so that we know the document we're speaking of, and you

20  will see I've written it in the upper right-hand corner.  Do

21  you see that, sir?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  Before you signed this document, did you

24  read it?

25            THE DEFENDANT:  Yes, ma'am, I did.

J4BKNJEP

1          THE COURT:  Before you signed this document, did you

2    discuss it with your attorney?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand, sir, that you are under

5    no obligation to waive indictment in this case?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Do you also understand that if you did not

8    waive indictment, and the government wanted to bring charges

9    against you, they would have to present those charges to a

10   grand jury, and that grand jury might decide to indict you on

11   those charges and it might decide not to indict you on those

12   charges?

13          Are you aware of that, sir?

14          THE DEFENDANT:  Yes, ma'am, I am.

15          THE COURT:  Do you understand that by waiving

16   indictment, what you're doing is giving up your right to have

17   this case presented to the grand jury?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  I've used the term "grand jury."  Do you

20   know what I'm speaking of when I use that term, sir?

21          THE DEFENDANT:  Yes, ma'am, I do.

22          THE COURT:  I don't want to know the specifics of your

23   communications, but have you discussed with your attorney what

24   the grand jury is and what purposes it serves?

25          THE DEFENDANT:  Yes, ma'am.

J4BKNJEP

1          THE COURT:  Do you need any information, additional

2     information, from me about the grand jury or your right to

3     proceed by way of indictment?

4          THE DEFENDANT:  No, ma'am.  That's fine.

5          THE COURT:  And is it your wish, sir, to proceed by

6     way of information, to waive your right to proceed by

7     indictment?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Mr. Spodek, do you know of any reason why

10    I should not find that your client has knowingly and

11    voluntarily waived his right to be indicted?

12          MR. SPODEK:  No, your Honor.

13          THE COURT:  And, Mr. Sobelman, the same question:  Do

14    you know of any reason why I should not find that Mr. Njemanze

15    has knowingly and voluntarily waived his right to be indicted

16    by a grand jury?

17          MR. SOBELMAN:  No, your Honor.

18          THE COURT:  Thank you.

19          Mr. Njemanze, again, based on our conversations, I

20    find that you are knowingly and voluntarily waiving your right

21    to proceed by way of indictment, and I am going to authorize

22    the filing of the information in this case, and it's been

23    marked "Superseding Information," it says in the upper

24    right-hand corner S6:18 CR 117.

25          Do you see that, sir?

J4BKNJEP

1            THE DEFENDANT:  Yes, ma'am, I do.

2            THE COURT:  You have a copy of this information, as do

3       I.

4            Have you read this document, sir?

5            THE DEFENDANT:  Yes, ma'am, I have.

6            THE COURT:  Have you had whatever time you needed to

7       discuss this document with your attorney?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Mr. Njemanze, would you like me to read

10      this document in open court?

11           THE DEFENDANT:  No.

12           THE COURT:  You will waive its public reading, sir?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Okay.

15           More specifically, sir, have you had enough of an

16      opportunity to speak with your attorney about the charge to

17      which you intend to plead guilty and any possible defenses that

18      you might have to that charge?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Without giving me the specifics of your

21      communications, has your attorney explained to you the

22      consequences of entering a plea of guilty?

23           THE DEFENDANT:  Yes, ma'am, he has.

24           THE COURT:  Are you satisfied with his representation

25      of you in this matter?

J4BKNJEP

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Mr. Njemanze, what I'm going to do is

3     change topics right now.  I'm going to talk to you about rights

4     that you have under the Constitution and laws of the United

5     States.  These are rights that you would be waiving were you to

6     enter a plea of guilty in this case.  You have been paying very

7     careful attention to everything that I've said.  I'm going to

8     ask you to continue to do that.  And if anything is confusing

9     to you, sir, please let me know.

10         Will you do that?

11         THE DEFENDANT:  Yes, ma'am, I will.

12         THE COURT:  Mr. Njemanze, under the Constitution and

13    laws of the United States, you have the right to enter a plea

14    of not guilty to the charge contained in this information.  Do

15    you understand that, sir?

16         THE DEFENDANT:  Yes, ma'am, I do.

17         THE COURT:  If you decided to plead not guilty, you

18    would be entitled to a speedy and public trial by a jury on the

19    charge contained in the information.  Do you understand that,

20    sir?

21         THE DEFENDANT:  Yes, ma'am, I do.

22         THE COURT:  And I'm using the term "information."  I

23    know the document says "Superseding Information."  But do you

24    understand that's what I'm speaking of?

25         THE DEFENDANT:  Yes, ma'am.

J4BKNJEP

1          THE COURT:  I appreciate it.  I thought you did.

2          If there were a trial, sir, you would be presumed to

3    be innocent, and the government would be required to prove you

4    guilty by competent evidence beyond a reasonable doubt before

5    you could be found guilty.

6          Do you understand that, sir?

7          THE DEFENDANT:  Yes, ma'am, I do.

8          THE COURT:  A jury of 12 people would have to agree

9    unanimously that you were guilty of this offense.  You would

10   not have to prove that you were innocent of the offense if you

11   went to trial.

12         Do you understand that, sir?

13         THE DEFENDANT:  Yes, ma'am, I do.

14         THE COURT:  At a trial, and at every stage of your

15   case, you are -- of your prosecution, you are entitled to the

16   assistance of an attorney.  If, and to the extent that you

17   could not afford an attorney, one is appointed for you at

18   public expensive, free of cost to you, in order to represent

19   you.

20         Do you understand that, sir?

21         THE DEFENDANT:  Yes, ma'am, I do.

22         THE COURT:  If there were a trial in this case, the

23   government's witnesses would have to come into court and

24   testify in your presence, your attorney could cross-examine the

25   government's witnesses, he could object to the government's

J4BKNJEP

evidence, and he could offer evidence on your behalf if you

wanted him to do so.  You would also have the right to have

subpoenas, or other documents, or process used in order to

compel witnesses to testify in your defense.

            Do you understand that, sir?

            THE DEFENDANT:  Yes, ma'am, I do.

            THE COURT:  If there were a trial in this case, sir,

you would have the right to testify, if you wanted to do so,

and you would have the right not to testify, if you wanted not

to do so.  If you decided not to testify, no one, including the

jury, could draw any inference or suggestion of guilt from your

decision not to testify.

            Do you understand that, sir?

            THE DEFENDANT:  Yes, ma'am, I do.

            THE COURT:  Another consequence of entering a guilty

plea in this manner is that you are giving up, or waiving, your

right to seek suppression, or exclusions, of the government's

evidence against you.

            Are you aware of that, sir?

            THE DEFENDANT:  Yes, ma'am, I am.

            THE COURT:  So have you had enough of an opportunity

to speak with your attorney about whether there is any basis to

seek suppression or exclusion of part or all of the

government's evidence against you?

            THE DEFENDANT:  Yes, ma'am, I have.

J4BKNJEP

1          THE COURT:  Do you understand, sir, that if you were

2     convicted after a trial, you would have the right to appeal

3     from the jury's verdict?

4          THE DEFENDANT:  Yes, ma'am, I do.

5          THE COURT:  Do you also understand that even now, as

6     you're entering this guilty plea, you have the right to change

7     your mind and to enter a plea of not guilty to the charge

8     contained in the information?

9          THE DEFENDANT:  Yes, ma'am, I do.

10          THE COURT:  Mr. Njemanze, if you plead guilty, and if

11     I accept your guilty plea, you will give up your right to trial

12     and the other rights that I've been discussing with you, other

13     than your right to an attorney.  You have the right to an

14     attorney whether you plead guilty or go to trial.  But if you

15     plead guilty, and if I accept your guilty plea, there will be

16     no trial, I will enter a judgment of guilty on Count One of

17     this information, I will sentence you at a later date based on

18     information that I receive from you here today, information

19     that I receive from the United States Probation Office in a

20     document known as a presentence investigation report, and

21     information that I receive from you and your attorney and from

22     the attorney for the government at the time of sentencing.

23          If you plead guilty, and if I accept your guilty plea,

24     there would be no appeal on the issue of whether the government

25     could use the evidence that it has against you.  There would

J4BKNJEP

1   also be no appeal on the issue of whether you committed the

2   offense to which you plead guilty.  I appreciate that I've said

3   a lot there, sir, but I've watched you follow along.

4           Do you understand each of the things I've said?

5           THE DEFENDANT:  Yes, ma'am, I do.

6           THE COURT:  I also want to make sure you understand

7   that by pleading guilty, you will have to give up, at least in

8   part, your right not to incriminate yourself.  What I mean by

9   that is:  I will ask you questions later in this proceeding to

10   confirm that you are pleading guilty because you are, in fact,

11   guilty and not for some other reason.  You will have to admit

12   and acknowledge your guilt of the offense charged in Count One.

13           Do you understand that, sir?

14           THE DEFENDANT:  Yes, ma'am, I do.

15           THE COURT:  Mr. Njemanze, do you understand each of

16   the rights that I've been discussing with you?

17           THE DEFENDANT:  Yes, ma'am, I do.

18           THE COURT:  Would you like me to provide any

19   additional or clarifying information about any of those rights?

20           THE DEFENDANT:  No, that's fine.  Thank you.

21           THE COURT:  Sir, are you willing to give up your right

22   to trial and these other rights that I've mentioned to you and

23   enter a plea of guilty to Count One of this information?

24           THE DEFENDANT:  Yes, ma'am, I do.

25           THE COURT:  Let us, then, talk about that charge.

J4BKNJEP

1          You are charged with participating in a conspiracy to

2     commit money laundering.  That's in violation of Section

3     1956(h) of Title 18 of the United States Code.  Are you aware

4     of that, sir?

5          THE DEFENDANT:  Yes, ma'am, I am.

6          THE COURT:  Mr. Njemanze, I'm going to ask for your

7     attention, and I will be paying attention as well.  I'm going

8     to ask the prosecutor to outline for both of us the elements of

9     this offense.

10          Thank you, Mr. Sobelman.

11          MR. SOBELMAN:  Count One of the superseding

12     information charges the defendant with conspiring to commit

13     money laundering.  Specifically, the elements are that:  Two or

14     more people agreed to violate the money laundering laws of the

15     United States, and that the defendant was part of that

16     agreement.

17          The particular object of Count One has five elements,

18     as charged in the indictment:

19          First, that one conducted or attempted to conduct;

20          Two, a financial transaction;

21          Three, knowing that the property involved in such a

22     financial transaction represented the proceeds of some form of

23     unlawful activity;

24          Four, which, in fact, involved the proceeds of

25     specified unlawful activity, here, wire fraud;

J4BKNJEP

1          And, five, that the defendant acted with the knowledge

2     that the transaction was designed, in whole or in part, to

3     disguise the nature, location, source, ownership, or control of

4     the proceeds of the specified unlawful activity.

5          THE COURT:  Okay.  Thank you very much.

6          Mr. Njemanze, were you able to hear the prosecutor

7     just now?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand, sir, that if you were

10    to proceed to trial, that is what the government would have to

11    prove at a trial?

12         THE DEFENDANT:  Yes, ma'am, I understand.

13         THE COURT:  Mr. Sobelman, you'll please excuse me if I

14    overlooked this.  Did you discuss venue at all?

15         MR. SOBELMAN:  I didn't, your Honor.

16         THE COURT:  Is this a case in which venue is waived?

17         MR. SOBELMAN:  I believe it is, your Honor.

18         THE COURT:  Thank you.

19         Mr. Spodek, do you agree, sir?

20         MR. SPODEK:  Yes, your Honor.

21         THE COURT:  Thank you.

22         Just so that Mr. Njemanze is clear, sir, when I speak

23    about venue, what I mean is that some piece of the offense took

24    place in this district.  Do you understand that, sir?

25         THE DEFENDANT:  Yes, ma'am, I do.

J4BKNJEP

1      THE COURT:  That is something that can be waived.  I

2   understand from your counsel that venue in the Southern

3   District of New York is being waived.  Is that your

4   understanding as well?

5      THE DEFENDANT:  Yes, ma'am.

6      THE COURT:  All right.

7      Sir, what I'm going to do now is to talk to you about

8   the maximum possible penalties that are associated with this

9   offense.  Maximum means most, and it's the most that is

10  permitted by statute.  And I'm doing that, sir, because I want

11  to make sure you understand that by entering a plea of guilty,

12  you're exposing yourself to the possibility of receiving any

13  combination of punishments up to the statutory maximum terms

14  that I'm about to describe for you.

15     Do you understand that, sir?

16     THE DEFENDANT:  Yes, ma'am, I do.

17     THE COURT:  I'm going to begin with restrictions on

18  your liberty.

19     The maximum term of imprisonment for this offense is

20  20 years' imprisonment.  Do you understand that, sir?

21     THE DEFENDANT:  Yes, ma'am, I do.

22     THE COURT:  Do you understand that any term of

23  imprisonment that I impose could be followed by a term of up to

24  three years of supervised release?

25     THE DEFENDANT:  Yes, ma'am, I do.

J4BKNJEP

1          THE COURT:  Let me talk to you for a moment, please,

2     about supervised release.

3          When I use that term, what I mean is a period of time

4     where you are subject to supervision by the United States

5     Probation Office.  There are terms and conditions of supervised

6     release that you would have to follow, and if you were unable

7     or unwilling to follow those terms and conditions of supervised

8     release, the possibility exists that you could be sent to

9     prison without a jury trial to serve term after a revocation of

10     your supervised release.  If that were the case, you could not

11     get any credit for any time that you had spent serving a term

12     of imprisonment.  You would also not get any credit for any

13     time that you had spent on supervised release in compliance

14     with its terms.

15          Do you understand each of those things, sir?

16          THE DEFENDANT:  Yes, ma'am, I do.

17          THE COURT:  I also want to make sure that you

18     understand that there is no parole in the federal system.  If

19     you were sentenced to a term of imprisonment, you would not be

20     released early on parole.  There is the possibility that you

21     could earn credit against your sentence for good behavior, but,

22     generally speaking, you'd have to serve approximately

23     85 percent of any term of imprisonment imposed.

24          Do you understand that, sir?

25          THE DEFENDANT:  Yes, ma'am, I do.

J4BKNJEP

1          THE COURT:  There are also certain financial penalties

2     that are associated, and these are in addition to any

3     restrictions on your liberty.

4          The maximum allowable fine here is the greatest of

5     these three things:  $500,000, twice -- let me say this

6     correctly -- twice the value of the property involved.

7          Yes, those are the two things; am I correct,

8     Mr. Sobelman?

9          MR. SOBELMAN:  Yes, your Honor.

10          THE COURT:  Thank you very much.

11          So that would be the maximum allowable fine, the

12     greater of these two things.

13          I can order restitution to any person or entity

14     injured as a result of your conduct, which, here, may be

15     calculated at $45,745.74.

16          I can order you to forfeit any property derived from

17     the offense or used to facilitate the offense.

18          And I must order a mandatory special assessment of

19     $100 per count of conviction.

20          Do you understand each of those things, sir?

21          THE DEFENDANT:  Yes, ma'am, I do.

22          THE COURT:  And do you understand that those are the

23     maximum possible penalties that are associated with this

24     offense?

25          THE DEFENDANT:  Yes, ma'am, I do.

J4BKNJEP

1          THE COURT:  Mr. Njemanze, I need to ask you a series

2    of questions.  Not all of these questions may apply to you, but

3    I ask them in all cases.

4          Are you a United States citizen?

5          THE DEFENDANT:  No, ma'am.

6          THE COURT:  Do you understand, sir, that a guilty plea

7    could have adverse effects on your immigration status, and that

8    could include further detention following completion of any

9    term of imprisonment and/or the possibility of your removal or

10   deportation from the United States?

11         Are you aware of that, sir?

12         THE DEFENDANT:  Yes, ma'am, I am.

13         THE COURT:  Without giving me the specifics, have you

14   discussed the possible immigration consequences of your plea

15   with your attorney?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Mr. Sobelman, given the last set of

18   answers, I'm not going to ask Mr. Njemanze about civil rights

19   he may lose.  Do you agree, sir?

20         MR. SOBELMAN:  Yes, your Honor.

21         THE COURT:  Thank you.

22         Mr. Njemanze, this is going to sound like an odd

23   question.  It is not meant to be.  Are you serving any other

24   sentence at this time, sir?

25         MR. SPODEK:  Jail sentence.

J4BKNJEP

1        THE DEFENDANT:  No, ma'am.

2        THE COURT:  Are you being prosecuted in any other

3    jurisdiction other than this one?

4        THE DEFENDANT:  No, ma'am.

5        THE COURT:  The reason I ask these questions is that

6    for some people, they have state criminal proceedings going on

7    at the same time as federal criminal proceedings, or sometimes

8    there are folks who have parole board proceedings at the same

9    time they have these federal proceedings.  What I wanted to

10   make sure you understand is that resolving the case before me

11   doesn't necessarily resolve any other case that you might have.

12   If this is the one case of which you're aware, we'll just focus

13   on this one.

14        Without giving me the specifics, sir, have you and

15   your attorney discussed the process of sentencing?

16        THE DEFENDANT:  Yes, ma'am, we have.

17        THE COURT:  Do you understand that in connection with

18   sentencing, there are a list of factors that I must consider?

19   They're contained in a statute that is 18, United States Code,

20   Section 3553(a).  So they're sometimes called the 3553(a)

21   factors.

22        Are you aware that there are those factors that I must

23   consider at sentencing?

24        THE DEFENDANT:  Yes, ma'am, I'm aware.

25        THE COURT:  One of those factors, sir, is something

J4BKNJEP

1    called the United States Sentencing Guidelines.

2              Is that a term with which you're familiar?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  If I use the term "guidelines" or

5    "sentencing guidelines," that's what I'm referring to.

6              What I'd like to make sure you understand, sir, is

7    that if anyone has attempted to predict for you what your

8    ultimate sentence may be, their prediction could be incorrect.

9    I will be the judge sentencing you.  I need to hear from you

10   today, I need to hear from the probation office in the future,

11   and I need to hear from you, and your attorney, and the

12   attorneys for the government at sentencing.

13             So, do you understand, sir, that today, no one can

14   predict with any confidence what your ultimate sentence will

15   be?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  And do you also understand, sir, that if

18   your ultimate sentence is different from what your attorney or

19   anyone else might have suggested that it might be, if it's

20   different from what you expected or hoped for, and if it's

21   different from any range contained in any agreement that you

22   might have with the government, you would still be bound by

23   your guilty plea?  What I mean by that is you would not be able

24   to withdraw your guilty plea based merely on dissatisfaction

25   with your sentence.

J4BKNJEP

1          Are you aware of that, sir?

2          THE DEFENDANT:  Yes, ma'am, I am.

3          THE COURT:  Mr. Njemanze, it is my understanding that

4     you are pleading today pursuant to a written plea agreement

5     with the government.  Am I correct?

6          THE DEFENDANT:  Yes, ma'am, you are.

7          THE COURT:  In connection with this proceeding, I have

8     been given a letter.  The letter is dated February 8th of 2019,

9     and it is from the United States Attorney's Office for the

10    Southern District of New York, and it is sent to your attorney,

11    Mr. Spodek.  It is a letter, and it includes, as well, certain

12    exhibits, including a consent preliminary order of forfeiture.

13          Have you seen this document, sir?

14          THE DEFENDANT:  Yes, ma'am, I have.

15          THE COURT:  Do you have a copy in front of you, sir?

16          THE DEFENDANT:  Yes, ma'am, I do.

17          THE COURT:  Is this your written plea agreement with

18    the government?

19          THE DEFENDANT:  Yes, ma'am, it is.

20          THE COURT:  I am marking the copy that I've been given

21    as Court Exhibit 2, and at the end of this proceeding, I will

22    give my copy to the government to keep safe in connection with

23    sentencing.

24          I'm going to ask you, please, to turn to page 6 of

25    this letter.  Are you there, sir?

J4BKNJEP

1          THE DEFENDANT:  Yes, ma'am, I'm there.

2          THE COURT:  On page 6, there are four signatures.  Are

3    there four signatures on your page 6, sir?

4          THE DEFENDANT:  Yes, there are, ma'am.

5          THE COURT:  Is one of them yours?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Did you sign this document today, sir?

8          THE DEFENDANT:  Yes, I did, your Honor.

9          THE COURT:  Did you sign it in the presence of your

10   attorney?

11         THE DEFENDANT:  Yes, ma'am, I did.

12         THE COURT:  Before signing this document, did you read

13   it?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  Did you discuss it for whatever length of

16   time you needed to with your attorney?

17         THE DEFENDANT:  Yes, we did discuss it.

18         THE COURT:  Did you understand this document at the

19   time you signed it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  I'm going to review certain portions of

22   the document with you, sir, and I will not review every page of

23   it.  But I am going to ask you if you could turn to the first

24   page -- actually, yes, let's go with the first page.  Are you

25   there, sir?

J4BKNJEP

1          THE DEFENDANT:  Yes, your Honor, I'm there.

2          THE COURT:  The last paragraph of the first page

3     indicates that you are admitting to the forfeiture allegation

4     that is associated with Count One of this information.  You're

5     agreeing to forfeit to the United States a sum of money equal

6     to $103,359.24, representing the amount of property involved in

7     the offense.

8          Is that your understanding, sir?

9          THE DEFENDANT:  Yes, ma'am, it is.

10          THE COURT:  Are you, in fact, admitting to the

11     forfeiture allegation that is contained in the indictment?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  I'm going to ask you, as well, please,

14     sir, to turn to page 2.  Tell me when you're at page 2, please.

15          THE DEFENDANT:  I'm there, ma'am.

16          THE COURT:  In the first full paragraph of page 2,

17     you're agreeing to make restitution in the amount of $45,745.74

18     in accordance with certain statutes.  The statutes listed there

19     are the federal restitution provisions.

20          Are you, in fact, agreeing to do that, sir?

21          THE DEFENDANT:  Yes, ma'am, I am.

22          THE COURT:  For the remainder of this page, it is my

23     understanding that you and the government are agreeing, or

24     stipulating, that the guidelines apply to your case in a

25     particular way.

J4BKNJEP

1        Is that your understanding, sir?

2            THE DEFENDANT:  Yes, ma'am, it is.

3            THE COURT:  Mr. Njemanze, you do understand that I did

4    not sign this agreement.  You did, your attorney did, the

5    government did.  I'm not bound by it.  I have an independent

6    obligation to calculate the sentencing guidelines as they apply

7    to your case.  I am not saying that I am coming up with a

8    different number, but I am saying that I have an independent

9    obligation to calculate them.

10           Do you understand that, sir?

11           THE DEFENDANT:  Yes, ma'am, I do.

12           THE COURT:  Do you also understand that if I correctly

13   calculate the guidelines and come up with a different range

14   than you and the government have arrived at, that would not be

15   a basis for you to withdraw from your guilty plea?

16           Do you understand that, sir?

17           THE DEFENDANT:  Yes, ma'am, I do.

18           THE COURT:  I'm going to ask you, please, to turn to

19   page 4 of the agreement, and let me know when you've gotten to

20   page 4.

21           THE DEFENDANT:  I'm there, ma'am.

22           THE COURT:  I'm looking at the second full paragraph.

23   It begins with the words, "It is agreed."

24           Do you see that, sir?

25           THE DEFENDANT:  Yes, ma'am, I do.

J4BKNJEP

1          THE COURT:  It is my understanding that this paragraph

2     is a collection of waivers.  You and the government are each

3     waiving your right to appeal or otherwise challenge your

4     sentence through a habeas petition, a motion to vacate the

5     sentence, a motion to correct the sentence, a motion for a

6     sentence reduction, or any other way, if certain things happen

7     at sentencing.

8          Is that your understanding as well, sir?

9          THE DEFENDANT:  Yes, ma'am, it is.

10          THE COURT:  I will talk to you about your waivers.

11          It is first my understanding that you are agreeing not

12     to appeal or otherwise challenge any sentence of imprisonment

13     within or below the stipulated guidelines range of 18 to 24

14     months' imprisonment.  So if I impose a term of 24 months'

15     imprisonment or something less than that, you are agreeing not

16     to appeal or otherwise challenge that piece of your sentence.

17          Am I correct, sir?

18          THE DEFENDANT:  Yes, ma'am, you are.

19          THE COURT:  I also understand that you're agreeing not

20     to appeal any term of supervised release that is less than or

21     equal to the statutory maximum of three years.  So if I were to

22     impose a term of three years of supervised release or something

23     less than that, you are agreeing not to appeal that piece of

24     your sentence.

25          Am I correct?

J4BKNJEP

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  I also understand that you are agreeing

3    not to appeal any restitution figure that is less than or equal

4    to $45,745.74; is that correct?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And you are agreeing not to appeal any

7    forfeiture amount that is less than or equal to $103,359.24; am

8    I also correct, sir?

9          THE DEFENDANT:  Yes, ma'am, you are.

10          THE COURT:  If you look a little bit further down, at

11    the last paragraph on that page -- and this carries over onto

12    page 5 -- you're recognizing that this guilty plea and this

13    conviction may make it very likely that you will be deported

14    from the United States, or that it is presumptively mandatory,

15    or, at the very least, that you are at risk of being deported,

16    or suffering other adverse immigration consequences.

17          Have you read that paragraph, sir?

18          THE DEFENDANT:  Yes, ma'am, I have.

19          THE COURT:  And do you understand that there may be

20    adverse immigration consequences that occur as a result of this

21    guilty plea?  Is that your understanding?

22          THE DEFENDANT:  Yes, ma'am, I do.

23          THE COURT:  Mr. Njemanze, does this agreement that you

24    and I have been talking about this afternoon constitute your

25    complete and total understanding of the agreement you have with

J4BKNJEP

1    the government?

2                THE DEFENDANT:  Yes, ma'am.

3                THE COURT:  Has anything been left out, sir?

4                THE DEFENDANT:  No, ma'am.

5                THE COURT:  All right.  I wanted to ask the question

6    from both sides.  So let me ask a different question:

7                Other than what is contained in this plea agreement,

8    has anyone made you any promise or offered you any type of

9    inducement in order to get you to sign this agreement or to

10   plead guilty here this afternoon?

11               THE DEFENDANT:  No, ma'am.

12               THE COURT:  Has anyone forced or threatened you to

13   sign this agreement or to plead guilty here this afternoon?

14               THE DEFENDANT:  No, ma'am.

15               THE COURT:  Has anyone made you any promise as to what

16   your ultimate sentence will be?

17               THE DEFENDANT:  No, ma'am.

18               THE COURT:  Could you please tell me, in your own

19   words, what it is you did that makes you believe that you are

20   guilty of the offense charged in Count One of this information?

21               THE DEFENDANT:  Conspiracy to commit money laundering.

22               THE COURT:  All right.  Let me, please, talk to you

23   about that.

24               Did this take place -- well, would you prefer that I

25   ask you some questions, or is there more that you'd like to

J4BKNJEP

1  tell me, sir?

2          THE DEFENDANT:  No, that's fine.

3          THE COURT:  Okay.

4          Sir, I'm understanding that this conduct took place

5  between 2016 and at least 2017; is that correct?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  And so in conspiring, what you did, as I

8  understand it, was you agreed with other people; is that

9  correct?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And you agreed to commit a criminal act;

12  is that also correct?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  When I say you agreed with other people,

15  the people with whom you had this agreement, they were not law

16  enforcement, were they, sir?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Okay.

19          So was your agreement to conduct transactions that

20  involved the proceeds of wire fraud?  Is that fair to say, that

21  you were basically engaging in financial transactions involving

22  the proceeds of wire fraud?  Is that fair?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  And you did so, or you agreed with others

25  to do this, so that the fact that they were the proceeds of

J4BKNJEP

1   wire fraud could be concealed; is that correct, sir?

2                THE DEFENDANT:  Yes, ma'am.

3                THE COURT:  At the time that you did this, did you

4   know that what you were agreeing to do was to conceal the fact

5   that these transactions, or the money involved in these

6   transactions, was the proceeds of wire fraud?

7                THE DEFENDANT:  Yes, ma'am.

8                THE COURT:  Did you also know, sir, that what you were

9   agreeing to do was wrong and illegal?

10               THE DEFENDANT:  Yes, ma'am.

11               THE COURT:  One moment, please, sir?

12               (Pause)

13               THE COURT:  Mr. Spodek, do you know of any valid

14   defense that would prevail at trial or any other reason why

15   Mr. Njemanze should not be permitted to plead guilty?

16               MR. SPODEK:  No, your Honor.

17               THE COURT:  Thank you.

18               Mr. Sobelman, are there additional questions that you

19   would like me to ask Mr. Njemanze?

20               MR. SOBELMAN:  No, your Honor.

21               THE COURT:  Could you please tell me, sir, were this

22   case to proceed to trial, what types of evidence might be

23   introduced at that trial?

24               MR. SOBELMAN:  Your Honor, among other things, there

25   would be evidence from -- there would be electronic evidence

J4BKNJEP

1    from the defendant's -- one moment?

2              THE COURT:  Of course.

3              (Pause)

4              MR. SOBELMAN:   -- from a codefendant's phone that

5    shows extensive communications between this defendant and that

6    codefendant engaging in the conspiracy that your Honor just

7    questioned the defendant about.

8              THE COURT:  Yes.

9              MR. SOBELMAN:  There would also be bank records,

10   financial records, and financial analysis showing the flow of

11   funds and the connections to the conversations and messages

12   between this defendant and that codefendant.

13             In addition, there would be victim testimony that

14   describe the ways in which they were defrauded in the

15   underlying wire fraud scheme and the fact that they sent the

16   money not understanding where it was going, having been lied

17   to, to accounts that were either controlled by or transacted in

18   by this defendant and his codefendant.

19             THE COURT:  Thank you for letting me know.

20             Mr. Njemanze, did you just now hear the prosecutor?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Do you understand, sir, that if this case

23   were to proceed to trial, that would be part or all of the

24   government's evidence at that trial?

25             THE DEFENDANT:  Yes, ma'am.

J4BKNJEP

| | |
|---|---|
| 1 | THE COURT:  Mr. Spodek, do you agree that there is a |
| 2 | sufficient factual predicate for a guilty plea? |
| 3 | MR. SPODEK:  Yes, your Honor. |
| 4 | THE COURT:  Is there any reason why I should not |
| 5 | accept it? |
| 6 | MR. SPODEK:  No, your Honor. |
| 7 | THE COURT:  Mr. Sobelman, do you agree that there is a |
| 8 | sufficient factual predicate for a guilty plea? |
| 9 | MR. SOBELMAN:  Yes, your Honor. |
| 10 | THE COURT:  Is there any reason why I should not |
| 11 | accept it? |
| 12 | MR. SOBELMAN:  No, your Honor. |
| 13 | THE COURT:  Mr. Njemanze, at this time do you wish to |
| 14 | enter a plea of guilty to Count One of Superseding Information |
| 15 | S6:18 CR 117? |
| 16 | THE DEFENDANT:  Yes, ma'am. |
| 17 | THE COURT:  Mr. Njemanze, because you've acknowledged |
| 18 | that you are, in fact, guilty as charged in this count, because |
| 19 | I'm satisfied that you know of your rights, including your |
| 20 | right to go to trial, because I'm satisfied that you're aware |
| 21 | of the elements of this offense and the penalties associated |
| 22 | with this, and because I find that you are knowingly and |
| 23 | voluntarily pleading guilty, I will accept your guilty plea, |
| 24 | and I will enter a judgment of guilty on Count One of this |
| 25 | information. |

J4BKNJEP

1          At a later stage, sir, the case will proceed to

2     sentencing.  And you heard me earlier speak about a presentence

3     investigation report that the probation office would prepare.

4     I'm going to order that that report not be prepared unless your

5     attorney or someone from his office is there with you at the

6     interview.

7          Do you understand that, sir?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And, Mr. Njemanze, you'll come to

10    understand, I don't provide legal advice -- I'm not doing that

11    here -- I'm giving you a thought.  You'll talk about the

12    thought with your attorney.  If you choose to speak to the

13    probation officer about anything, I would ask that you ensure

14    that what you say to the probation officer is as complete and

15    as accurate as it can be.  I say that because I rely very

16    heavily on the presentence report in deciding what is an

17    appropriate sentence.  That presentence report is most useful

18    to me when it is accurate and when it is complete.  You will

19    have an opportunity to see that report before I ever see it.  I

20    invite you to look at it and to discuss it with your attorney,

21    and if there is anything that you wish to modify, or correct,

22    or object to, you will have an opportunity to do that.

23         Do you understand that, sir?

24         THE DEFENDANT:  Yes, ma'am, I do.

25         THE COURT:  Ms. Noriega, may I please have a

J4BKNJEP

1    sentencing date?

2            And may I ask the parties:  Should we go out the

3    traditional 120 days or so?

4            MR. SOBELMAN:  Yes, your Honor.

5            THE COURT:  Okay.

6            Mr. Spodek, the same?

7            MR. SPODEK:  Yes, that would be ideal, your Honor.

8            THE COURT:  Thank you for letting me know.

9            Ms. Noriega?

10           THE DEPUTY CLERK:  Yes, your Honor.

11           I had it for 90 days.  Sorry.

12           THE COURT:  Ninety days may be fine.  I don't know

13   what the probation office is looking for these days.

14   Whatever -- we can try 90.

15           THE DEPUTY CLERK:  Okay.  July 16th, at 3:00 p.m.

16           MR. SPODEK:  That's fine for us, your Honor.

17           MR. SOBELMAN:  Yes, your Honor.

18           THE COURT:  Okay.  Thank you.

19           If it turns out the probation office needs more time,

20   they will certainly let us know.

21           Mr. Sobelman, to the extent you have not already done

22   so, please arrange to have the factual statement presented to

23   the probation office.

24           And, Mr. Spodek, in the next two weeks, if you could

25   arrange for the interview of your client.

J4BKNJEP

1          MR. SPODEK:  Yes, your Honor.

2          THE COURT:  I'll remind the parties I'd like the

3   defense sentencing submission two weeks in advance of

4   sentencing, the government's responsive submission one week in

5   advance of sentencing, so that I can have a meaningful

6   opportunity to look at them.

7          Let me now talk to the parties about the issue of

8   bail.  It was my understanding -- it may still be my

9   understanding -- that the parties have reviewed the pretrial

10  services report that was prepared in connection with this case.

11         Am I correct?

12         MR. SOBELMAN:  The government has, yes, your Honor.

13         THE COURT:  Okay.

14         Mr. Spodek, you've seen it as well?

15         MR. SPODEK:  Yes, I've reviewed it.

16         THE COURT:  I have a copy as well.  I've reviewed it.

17  Thank you for sending it to me in advance of this proceeding.

18         Have the parties discussed whether there is a set of

19  conditions on which the parties agree, and pursuant to which,

20  Mr. Njemanze could be released, and, if so, may I please hear

21  what that is?

22         MR. SOBELMAN:  Yes, your Honor, we have.  And we have

23  a set of conditions that we jointly propose to your Honor.

24         First, $250,000 personal recognizance bond, cosigned

25  by three financially responsible persons;

J4BKNJEP

1          Second, supervision as directed by pretrial services;

2          Third, travel restricted to the Southern and Eastern

3   Districts of New York, and the Central District of California,

4   and points in between for purposes of travel to court

5   appearances, and, in addition, he may travel for work outside

6   of the Central District of California with preapproval by

7   pretrial services;

8          That he be required to surrender all travel documents

9   and refrain from making any new applications.

10          And I will note, as --

11          THE COURT:  How does that work with the preceding

12   condition that you've just identified?

13          MR. SOBELMAN:  By travel documents, we mean

14   international travel documents.

15          THE COURT:  Thank you.

16          MR. SOBELMAN:  Such as a passport.  And I will note

17   that this defendant surrendered his passport to the agents

18   previously, and they will be providing that to pretrial

19   services.

20          THE COURT:  Okay.

21          MR. SOBELMAN:  That the Court impose a curfew to be

22   directed by pretrial services, which will be enforced by

23   electronic monitoring;

24          That the defendant maintain or seek employment;

25          And that the defendant shall be released on his own

J4BKNJEP

1   signature today, with two weeks to meet the conditions,

2   principally the three financially responsible persons cosigning

3   the bond.

4           THE COURT:  Is there any provision or discussion about

5   drug testing or treatment?  Do you wish it to be as directed by

6   the pretrial services office?

7           MR. SOBELMAN:  Your Honor, we would have no objection

8   to that.  We didn't discuss it, and my reading of the pretrial

9   services report is that he indicated no history of substance

10  abuse, but we defer to the Court on whether that's necessary.

11          THE COURT:  Let me please speak with the pretrial

12  services officer.

13          In these situations, where there is no obvious history

14  of drug abuse, is it preferable that I not provide anything or

15  that I have it set up as drug testing and treatment as

16  directed?

17          MR. CHAN:  Your Honor, we could have, on the new

18  disposition sheet, that we have indicated submit one urine

19  test; if positive, drug testing and treatment.

20          THE COURT:  Is that your suggestion for this case?

21          MR. CHAN:  Yes, we can have him do that.

22          THE COURT:  Let me make sure that is still something

23  the parties would agree with.

24          MR. SOBELMAN:  The government defers to the Court and

25  pretrial services on this.

J4BKNJEP

1          THE COURT:  Okay.

2          Mr. Spodek, the same?

3          MR. SPODEK:  Yes, Judge.

4          THE COURT:  Okay.  Thank you.

5          Let me, please, understand a little bit better the

6     travel situation.  I have a pretrial services report that

7     recites a Baltimore, Maryland address, and, yet, I think I

8     understand from the report, that it is Mr. Njemanze's intent to

9     move out to California.  Is that correct?  You'll excuse me if

10    I'm a little bit confused as to which states are in play.

11         Mr. Spodek, do you want to be heard on this issue?

12         MR. SPODEK:  Sure.  Absolutely, Judge.

13         THE COURT:  Thank you.

14         MR. SPODEK:  The Maryland address is his --

15    historically his home address.  He is living with a friend

16    currently in California, and he would like to remain living

17    with the friend during the pendency of this case.

18         THE COURT:  Okay.  I think I do understand that.

19         And the government has no objection to that?

20         MR. SOBELMAN:  No objection, your Honor.

21         THE COURT:  And, Ms. Chan, do you also agree with

22    this?  There would be no problem in having him living in

23    California?

24         MR. CHAN:  That should not be a problem.  We will

25    request courtesy supervision in California.

J4BKNJEP

1          THE COURT:  As a matter of courtesy, they would also

2     handle the electronic monitoring and the curfew?

3          MR. CHAN:  That is correct.

4          THE COURT:  Thank you for letting me know.

5          One moment, please.  I want to make sure I understand

6     these conditions before I agree to them.  Thank you.

7          (Pause)

8          THE COURT:  Counsel, I've accepted these conditions,

9     and they are as follows:  A $25,000 personal recognizance bond

10    signed by three financially responsible parties; travel

11    restricted to the Southern and Eastern Districts of New York,

12    the Central District of California, places covered by travel to

13    court, and travel for work as approved by pretrial services;

14    the surrender of travel documents and no new applications;

15    pretrial supervision, as directed by pretrial services; the

16    submission to one urinalysis, and if positive, the additional

17    condition of drug testing or treatment; a curfew and electronic

18    monitoring, as administered by the pretrial services office; a

19    directive that the defendant either continue or seek

20    employment; and Mr. Njemanze being released on his own

21    signature, with the remaining conditions met on or before

22    April 25th of 2019.

23          Is there anything that I've stated incorrectly?

24          MR. SOBELMAN:  Your Honor may have said 25,000.  I

25    believe it's 250,000.

J4BKNJEP

1            THE COURT:  250,000.  I'm sorry if I said 25,000.

2            MR. SOBELMAN:  Thank you, your Honor.

3            THE COURT:  You'll excuse me.  I saw and I heard

4      250,000.

5            MR. SOBELMAN:  Thank you, your Honor.

6            THE COURT:  So thank you.

7            All right.  Mr. Spodek, you agree as well, sir?

8            MR. SPODEK:  Yes, your Honor.

9            THE COURT:  Thank you very much.  I will adopt that.

10           (Pause)

11           THE COURT:  Counsel, I've done three duplicate

12     originals, which I think will suffice.  I'm going to have my

13     deputy show them to you, and you'll tell me if they will

14     suffice.

15           Is there something to be added?

16           MR. SOBELMAN:  Nothing from the government, your

17     Honor.

18           MR. SPODEK:  Nothing, Judge.

19           THE COURT:  Okay.  Nothing from pretrial services; is

20     that correct?

21           MR. CHAN:  That's correct.

22           THE COURT:  Okay.  Thank you.

23           Mr. Spodek, may I address your client directly?

24           MR. SPODEK:  Yes, your Honor, of course.

25           THE COURT:  Thank you.

J4BKNJEP

1          Mr. Njemanze, as a result of the order that I've just
2     issued and handed out copies of, you will be released on a
3     series of bail conditions.  You need to comply with those
4     conditions, sir.  You must follow everything that you are
5     directed to do by the pretrial services officer, and you must,
6     as well, abide by anything that is specified in that order.
7          Do you understand that, sir?
8          THE DEFENDANT:  Yes, ma'am, I do.
9          THE COURT:  If you do not, I don't want to overstate
10    the matter by saying only bad things can happen, but the
11    possibility exists that you could be remanded, and if there are
12    cosigners on your bond, the possibility exists that the bond
13    could be foreclosed as to them.
14         Do you understand that, sir?
15         THE DEFENDANT:  Yes, ma'am, I do.
16         THE COURT:  More broadly, sir, if you are directed to
17    appear in this court, you have to be here.  Right now, we've
18    set up a sentencing date or a next conference date of
19    July 16th, and you have to be here.  If that date is changed,
20    you'll have to be here on the changed date.  If you are not
21    present in this courtroom on a date and time where you've been
22    ordered to be present in the courtroom, you could be prosecuted
23    for a separate offense that is commonly known as bail-jumping.
24         Are you aware of that, sir?
25         THE DEFENDANT:  Yes, ma'am, I am.

J4BKNJEP

1          THE COURT:  So do I understand you're going to be here

2     when I order you to be here?

3          THE DEFENDANT:  Yes, ma'am, I will be.

4          THE COURT:  Okay.  Thank you.

5          Is there anything else the government wishes to bring

6     to my attention in this proceeding?

7          MR. SOBELMAN:  No, your Honor.

8          THE COURT:  Thank you.

9          Mr. Spodek, is there anything that you'd like to bring

10    to my attention on behalf of your client?

11          MR. SPODEK:  No, your Honor.

12          THE COURT:  I thank you very much for staying this

13    afternoon.  We are adjourned.  Thank you.

                              * * *

14

15

16

17

18

19

20

21

22

23

24

25

JC95njeS                      sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                             18 Cr. 117 (KPF)

5    KEMOKALAM NJEMANZE,

6                   Defendant.

7    ------------------------------x

8                                             December 9, 2019
                                              3:10 p.m.
9

10   Before:

11                   HON. KATHERINE POLK FAILLA,

12                                            District Judge

13

14                        APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:   JULIANA MURRAY
17        Assistant United States Attorney

18   TODD A. SPODEK
          Attorney for Defendant
19
     ALSO PRESENT:  GREGORY HOLM, Secret Service
20

21

22

23

24

25

JC95njeS                              sentence

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your name for

3    the record, beginning with the government.

4           MS. MURRAY:  Good afternoon, your Honor.  Juliana

5    murray on behalf of the United States.  I am joined at counsel

6    table by Special Agent Gregory Holm, with the U.S. Secret

7    Service.

8           THE COURT:  Good afternoon to both of you, and thank

9    you.

10          Hello, Mr. Spodek.

11          MR. SPODEK:  Good afternoon, your Honor.  Gregory

12   Spodek and to my left is Mr. Kemokalam Njemanze.

13          THE COURT:  Good afternoon to both of you.

14          Sir, I may have mispronounced your client's last name.

15   May I have his preferred pronunciation?

16          THE DEFENDANT:  Njemanze.

17          THE COURT:  I am having difficulty with the N, but

18   thank you.

19          Mr. Spodek, is there anyone else here in the courtroom

20   to support your client today?

21          MR. SPODEK:  Yes, your Honor.  In the second row is

22   Ms. Kelechi Ukpaka who is Mr. Njemanze's girlfriend.

23          THE COURT:  Okay.  Thank you and, yes, I believe I

24   read about her in the presentence investigation report so she

25   is welcome.  Thank you very much for coming this afternoon.

JC95njeS                          sentence

1              Let me make sure I have the documents I should have in

2      connection with sentencing.  I have a presentence investigation

3      report and it is dated September 12 of 2019.  I have a

4      sentencing submission that is dated December 3rd, with

5      exhibits, including some certificates.  I have a government

6      sentencing submission that is dated December 4 of 2019.  I have

7      a submission that I have just received in the last few hours

8      with some additional materials on behalf of Mr. Njemanze.  I

9      have a notice of intent to request judicial removal, a consent

10     preliminary order of forfeiture money judgment, and an order of

11     restitution.

12             Ms. Murray, should I have anything else from the

13     government?

14             MS. MURRAY:  No, your Honor.

15             THE COURT:  Thank you.

16             Mr. Spodek, should I have anything else from the

17     defense?

18             MR. SPODEK:  No, Judge.

19             THE COURT:  Good to know.  Thank you.

20             Ms. Murray, if I could begin with you, has the

21     government had a sufficient opportunity under Federal Rule of

22     Criminal Procedure 32 to review the presentence investigation

23     report in this case?

24             MS. MURRAY:  Yes, your Honor.

25             THE COURT:  And are there any objections to its

JC95njeS                          sentence

1    contents?

2           MS. MURRAY:  Your Honor, the only point that I would

3    note, and I need to find the citation, with respect to the

4    defendant's status, in preparing the JRO for this proceeding we

5    learned that the defendant does not have any legal status in

6    the U.S., he is not a green card holder.  My understanding is

7    that he was a visa overstay subject to removal under INA

8    Section 237(a)(1)(B).  There was an application that he had

9    filled out and submitted but it was never approved so there was

10   never any legal status conferred to the defendant.

11          THE COURT:  So, you are looking at the information

12   page, page 2 of the PSR, which indicates that his immigration

13   status is one of permanent resident with a green card.  Is that

14   correct?

15          MS. MURRAY:  Yes.  Thank you, your Honor; yes.

16          THE COURT:  Mr. Spodek, do you agree that that is an

17   error in the presentence investigation report?

18          MR. SPODEK:  Yes, Judge; I do.

19          THE COURT:  We will make that change.

20          Mr. Spodek, let me turn to you, sir.  Have you and

21   your client had sufficient opportunity, under Federal Rule of

22   Criminal Procedure 32, to review the presentence investigation

23   report in this case?

24          MR. SPODEK:  Yes, your Honor.

25          THE COURT:  And we have just talked about one

JC95njeS                              sentence

1   correction that the government has proposed.  Do you have any

2   corrections or objections to propose to the report, sir?

3               MR. SPODEK:  Nothing in addition to that one.

4               THE COURT:  Okay.  Don't go too far away, sir, I have

5   a couple more questions for you.

6               MR. SPODEK:  Yes, your Honor.

7               THE COURT:  Thank you.

8               May I address your client directly?

9               MR. SPODEK:  Yes.  Of course.

10              THE COURT:  Mr. Njemanze, have you had an opportunity

11  to review the presentence investigation report in this case?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  And to the extent there was any

14  information that you wanted to communicate to the probation

15  officer to give to me, were you able to give that information

16  to your attorney?

17              THE DEFENDANT:  Could you repeat that again?

18              THE COURT:  Of course.  I will ask that question

19  better.

20              To the best of your understanding, everything in the

21  presentence report is correct, sir?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  And to the extent that there was

24  information that you wanted me to know, were you able to give

25  that information to your attorney?

JC95njeS                          sentence

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  And so his submissions to me in connection

3    with this case reflect that information?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Thank you.

6              Mr. Spodek, an additional question for you, sir.  At

7    the back of this presentence investigation report beginning at

8    page 22 there are mandatory and standard and special conditions

9    of supervised release.  Have you had an opportunity to review

10   those with your client?

11             MR. SPODEK:  Yes, your Honor.

12             THE COURT:  Do you have any objection to any of the

13   proposed special conditions of supervised release?

14             MR. SPODEK:  No, your Honor.

15             THE COURT:  And may I, sir, refer to them collectively

16   as the mandatory, standard, and special conditions of

17   supervised release rather than reading them into the record?

18             MR. SPODEK:  Yes, your Honor.

19             THE COURT:  And, again, may I address your client

20   directly?

21             MR. SPODEK:  Of course.

22             THE COURT:  Thank you.

23             Mr. Njemanze, have you just heard me speaking with

24   defense counsel about the conditions of supervised release.  Do

25   you recall reviewing those with your attorney?

JC95njeS                         sentence

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  And, for convenience, if it is okay with

3    you, I am going to refer to them as a group as the mandatory

4    standard and special conditions, without reading each one here

5    in open court.

6            Are you comfortable with that, sir?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Will you understand what I am referring

9    to, sir?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Thank you for letting me know.

12           Mr. Spodek, you may sit down for a little bit, sir.

13           MR. SPODEK:  Yes, your Honor.

14           THE COURT:  Ms. Murray, a few questions for you,

15   please.

16           You are welcome to tell me that you would rather

17   answer these in your general sentencing presentation but just a

18   few things I would like clarification on.  There is, to me,

19   some confusion about Mr. Njemanze's marriage because I think I

20   am understanding from the government's submission that you have

21   a belief that it may have been entered into principally or

22   solely for the purpose of obtaining status in this country and

23   not for some other reason.

24           Do you want to be heard on that further?

25           MS. MURRAY:  If I may have a moment, your Honor?

JC95njeS                          sentence

1                THE COURT:  Yes, you may.

2                MS. MURRAY:  Thank you.

3                THE COURT:  And if I misunderstood your submission,

4     please, tell me.

5                (Counsel conferring)

6                (Pages 9-15 SEALED by order of the Court)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JC95njeS                              sentence

```
 1              (In open court)

 2              THE COURT:  Mr. Spodek, you are welcome to sit down.

 3    Thank you.

 4              MR. SPODEK:  Yes, your Honor.

 5              THE COURT:  Let me, before I forget, adopt the

 6    presentence investigation report, the factual findings that are

 7    contained in it and the guidelines calculations that are

 8    contained in it.

 9              Ms. Murray, I would like to hear from you in

10    connection with sentencing and I want to hear from you on

11    whatever you want to tell me.  There are a few issues raised in

12    Mr. Spodek's submission that would be useful for me to have

13    your position on and some of them I believe are addressed in

14    your written submission but I will ask you, nonetheless, to

15    repeat it.  They include the statements that Mr. Njemanze was

16    in a nonsupervisory role with minimal financial gain, sort of a

17    lesser player in this conspiracy, especially when compared with

18    someone like Mr. Ifeanyi Ezeji; secondly, that I should

19    consider the collateral immigration consequences that he has

20    that not everyone in this case has.

21              I think those are the principal issues that are

22    emphasized in his submission but whatever else would you like

23    to tell me, I am here to hear.

24              MS. MURRAY:  Thank you, your Honor, and I will address

25    those points briefly but I am happy to answer any other
```

JC95njeS                              sentence

1   specific questions your Honor has on those points.

2           For the reasons that were in our written sentencing

3   submission, the government believes that a guideline sentence

4   is appropriate in this case.  The primary reasons are the

5   nature and seriousness of the offense.  As we know, these

6   business e-mail compromise schemes do have real victims.  These

7   are crimes where the frauds are carefully constructed to evade

8   detection and to deceive people, innocent people and unwitting

9   victims, whose funds are stolen.

10          Just to give one specific example, for your Honor,

11  there is a woman named Susan Bell who was one of the victims of

12  this scheme.  She is the person whose $45,000 and change is the

13  subject of the order of restitution.  It was a woman who was

14  purchasing a home and in the process of her home loan she was

15  provided what she believed to be a valid e-mail indicating that

16  she should wire the funds for her home loan to a certain place.

17  Unknown to her this was actually one of the e-mails that was

18  part of the business e-mail compromise scheme that the

19  defendant participated in.  So, her $45,000 and change went to

20  this conspiracy rather than to its intended purpose which was

21  to assist her in purchasing a home.

22          This defendant, in particular, coordinated with

23  Mr. Ifeanyi Ezeji, among others, about Susan Bell, and we know

24  that from the agent's review of electronic evidence in this

25  case.  We have seen a video that Ifeanyi Ezeji sent to this

JC95njeS                          sentence

1    defendant that is essentially a video, it is effectively a

2    screenshot showing the wire transfer of this $45,000 and

3    change.  And there is also communications within the electronic

4    communications that indicates Ms. Bell's name.

5            So, we know that this defendant was involved in that

6    particular example of one of the acts in this conspiracy.  It

7    is just one example but so that your Honor understands his role

8    in the conspiracy.

9            He also coordinated the transfer of funds including

10   not only with Ifeanyi Ezeji but with other co-conspirators in

11   other countries like Nigeria.

12           Now, with respect to his role and his relative

13   culpability, which I think goes to a point made in the defense

14   submission and also to your Honor's question, the government

15   does agree that he is less culpable than Ifeanyi Ezeji, for

16   example.  That said, in the flowchart of the co-conspirators

17   that have been charged in this case, we do believe he is in the

18   middle somewhere.  He is actively coordinating the transfer of

19   funds and his participation is not limited to one

20   co-conspirator.  For example, he is not just coordinating with

21   Ifeanyi Ezeji.  He is not a slightly more isolated member of

22   the conspiracy like, for example, Christopher Ezeji, who did

23   passports but that was his role and that was a limited cap and

24   role.  This defendant did have involvement with multiple

25   members of the conspiracy whether it was direct text, WhatsApp

JC95njeS                    sentence

messages, directing wire transfers, confirming wire transfers
of members of the conspiracy who were not in the United States.

So, we take no position on whether it was a
supervisory role or not but I would say it was an active role
and it certainly wasn't a limited role in the way that some of
the other less culpable defendants in this case had.

We also believe that a guideline sentence is
appropriate in this case to promote adequate deterrence, both
specific deterrence for this defendant and general deterrence.
On the specific deterrence point I don't disagree that the
immigration consequences are a factor for this defendant that
weren't necessarily present for other defendants.  This
defendant has consented to judicial removal upon his sentencing
so there is less concern with this defendant not being
adequately deterred than there would have been with other
defendants who would stay in the country.  It is a bit
convoluted, I am happy to say that again, but I do agree that
that is a factor that again can be and should be considered in
determining deterrence and what sentence is appropriate.  That
said, in addition to the specific deterrence here, we believe
that a sentence within the guidelines range is necessary to
adequately deter other individuals who might be involved in
this kind of fraud -- other individuals, whether they have
legal immigration status or not but individuals who may not
make a lot of profit from the scheme but who do a lot of harm

JC95njeS                       sentence

1    and who create a lot of costs to innocent victims.

2           So, with respect to the profit that this defendant

3    made, I know the defense has suggested that it was around

4    $6,000 from his role in the scheme, if that's the case that's a

5    minimal conflict.  That said, we have over $100,000 in

6    identifiable losses that this defendant was responsible for

7    with his co-conspirators including, as I mentioned, one

8    identifiable victim and $45,000 for that single transaction.

9           So, small amount of profit personally perhaps, but

10   even if an individual doesn't profit, the government want to

11   make sure that this conduct is deterred because, as I said,

12   there are real victims.

13          THE COURT:  Just one moment, please?

14          MS. MURRAY:  Yes.

15          THE COURT:  I am understanding from paragraph 70 of

16   the presentence investigation report that Mr. Njemanze came

17   here in or about February of 2016.  I thought I understood as

18   well from the information or the charging instrument in this

19   case that the criminal conduct was from 2016 until 2017.  Is it

20   the government's understanding that the defendant came here

21   just to participate in this fraud or for some other reason?

22   And, should that matter?

23          MS. MURRAY:  If I may have just a moment, your Honor?

24          THE COURT:  Take whatever time you need, please.

25          MS. MURRAY:  Thank you.

JC95njeS                    sentence

1           (Counsel conferring)

2           MS. MURRAY:  Your Honor, it is not our understanding

3    that the defendant came to the U.S. in February of 2016 for the

4    specific purpose of participating in this conspiracy.  I'm not

5    exactly sure how the dates charged in the superseding

6    information, if it is a generality in or about 2016.  I'm not

7    sure how he those match up with his arrival.  We do understand

8    that he also had legitimate employment at or around the time

9    that he came to the U.S. in early 2016.

10          THE COURT:  Could you remind me, please, the length of

11   time over which the entire conspiracy existed?

12          MS. MURRAY:  Yes, your Honor.  Just one moment,

13   please.

14          (Counsel and Agent conferring)

15          MS. MURRAY:  Your Honor, the approximate time period

16   of the conspiracy was around September of 2016, those are some

17   of the first specific victims and transactions involving the

18   conspiracy that we have identified; September 2016 until around

19   August of 2017 when Ifeanyi Ezeji was arrested.

20          THE COURT:  Why I am asking is that, at paragraph 79

21   of the presentence investigation report, it recites that

22   Mr. Njemanze was unemployed from his arrival here in February

23   of 2016 until September of 2017.  So, your statements to me

24   about his having a history of continued employment, it seems

25   that it pre-dates and post-dates his conduct that brings him

1   here before me today.

2            MS. MURRAY:  Your Honor, that appears right to me from

3   the presentence report.  I don't -- and I apologize if I

4   misspoke -- it is my understanding that he did not come for the

5   purpose of the conspiracy.  I guess I should say I don't have

6   an understanding of why he did come.

7            THE COURT:  Thank you.

8            MS. MURRAY:  I do understand that at some point in his

9   time in the U.S. he has had legitimate employment but I don't

10  have an understanding of whether that is why he came to the

11  U.S.

12           THE COURT:  I appreciate the clarification and I will

13  let you continue.

14           MS. MURRAY:  Essentially I am finished, your Honor.

15           I would just note, again to the point that your Honor

16  had raised and that the defense has raised, the government also

17  contends that a guideline sentence is appropriate here to avoid

18  unwarranted sentencing disparities between this defendant and

19  his co-defendants who have been charged.  At page 3 of our

20  written submission we provided to the Court a table that shows

21  other defendants in this case and we ranked those in what we

22  believe is our best understanding of the relative order of

23  culpability and that table also shows the guidelines range of

24  each of those defendants and then for those who have been

25  sentenced the sentence that has been imposed.  For the reasons

JC95njeS                         sentence

1    that we laid out in that table and then also in the discussion

2    about this defendant's relative role in the conspiracy, we

3    believe that a sentence within the 18 to 24 months guideline

4    range would appropriately reflect the seriousness of this

5    defendant's conduct in the offense, would appropriately

6    encourage adequate deterrence for this defendant and general

7    deterrence, and would be appropriate in light of the other

8    defendants in this case this.

9            THE COURT:  Thank you very much.

10           Mr. Spodek, I will hear from you now, sir.

11           MR. SPODEK:  Your Honor, Kemo, as I know him, is 35

12   years old, stands before you as a current resident -- not in

13   the immigration vocabulary but is a resident of America for

14   four years.  He has been working throughout those four years as

15   an electronic medical record consultant and proof of that I

16   believe was provided to pretrial and, in fact, I did request

17   your Honor give permission for some employment jobs over the

18   time of this case.  He was making approximately $3,200 a week

19   so almost $150,000 annually if he had steady employment.

20           THE COURT:  I am understanding this began in 2017; is

21   that correct?

22           MR. SPODEK:  The employment, your Honor, or the

23   conspiracy?

24           THE COURT:  No, sir; the employment.  I am looking, in

25   particular, at paragraph 79 and 80 of the presentence

JC95njeS                              sentence

investigation report and it recites unemployment from February

2016 through September of 2017, and then employment as a

self-employed electronic medical record consultant since

September of 2017.

          I just want to make sure that's correct.

          MR. SPODEK:  Yes, Judge; that is correct.

          THE COURT:  Okay.  Please go from there, sir.

          MR. SPODEK:  He has had a number of opportunities for

gainful employment here and really has taken advantage of the

life that he can make here.  He came to the U.S. for economic

reasons and, as your Honor is keenly aware, these financial

frauds are rampant in Nigeria and people that he knows from

home are involved in them and he has taken responsibility for

getting himself mixed up into something that will forever

affect him, his family, his girlfriend, his future, his career.

Every aspect of his life has been permeated by his decision to

be involved in this.

          He took responsibility early on, he took a timely

plea, he tried to cooperate to the best of his abilities.  Even

though he may not have been a hundred percent forthright in the

initial stage of the meeting he ultimately was forthright and I

think that is commendable and I think that it's easy for an

outsider to look at a meeting with the government and say *How*

*is that you weren't a hundred percent forthright and honest*

*from the minute you start talking?* but the pressures are

JC95njeS                    sentence

immeasurable.  And when you are a foreigner at one of these

meetings and your whole life is on the line, often times it

takes a minute and consultation with your attorney to come to

terms with the situation and express yourself honestly.  And

that's what he ultimately did.

        Judge, from my calculation and my understanding he may

have made about $1,500 to a max of $5,000.  So, we are talking

about a conspiracy here that's 11 months, we are talking about

someone who didn't have enough information to cooperate.  By

the government's own account he didn't have enough information.

He was a middle-man conveying messages between people and he

made a horrible mistake and he possibly profited to the tune of

$5,000 max and I believe the government would agree with that

number, or $6,000 going that far.

        THE COURT:  But you would agree that he is tied to

losses in excess of $100,000?

        MR. SPODEK:  Yes, your Honor.  Yes, I would.  It is

just his personal profit as far as his involvement.

        Judge, he certainly didn't have any sort of

supervisory role, he didn't set anything in motion, he did

didn't create the scheme or tried to arrange for other people

to be involved in the scheme.  He was a player in the scheme

but it certainly wasn't something that he created and was

trying to perpetuate.  I think it is worth noting that I

believe the scheme continued on past his involvement.  So, I do

JC95njeS                    sentence

1    think that at some point he wasn't involved anymore and that he

2    wasn't actively involved.

3          THE COURT:  When did you understand the period of his

4    involvement to span, sir?

5          MR. SPODEK:  Judge, if I could have one moment?

6          THE COURT:  Of course.  Take whatever time you need.

7          (Defendant and counsel conferring)

8          MR. SPODEK:  Judge, from my investigation and my

9    conversations with my client, he ceased communicating with

10   Mr. Azika around March of 2017.

11         THE COURT:  Sir, is that Mr. Ezeji or Mr. Azika?

12         MR. SPODEK:  Ezeji.  Ezeji.

13         THE COURT:  Yes; Ifeanyi Ezeji.  Okay, yes.  Tell me

14   again, please, the month, sir?

15         MR. SPODEK:  So, from my investigation and my

16   understanding, he was involved from September 2016 until around

17   March of 2017.

18         THE COURT:  Okay.  Thank you.  Please continue.

19         MR. SPODEK:  Judge, as you have seen from my

20   sentencing submission, this is someone who has tried to make a

21   better life here and certainly has tried to improve himself and

22   be a productive member of society here.  We have attached a

23   number of certificates as well as the fact that he was giving

24   blood and that he has created some GoFundMe pages to help with

25   people who suffer from diseases.

JC95njeS                         sentence

1          Lastly, Judge, the only thing that I would bring up is

2      that the collateral consequences for him are severe.  He is

3      going to be deported back to Nigeria.  He has agreed, he has

4      taken the burden away from the government to necessarily

5      litigate that issue.  And his life, again, won't be the same no

6      matter what.  The opportunities are not there in Nigeria like

7      they are here and he, unfortunately, will not necessarily be

8      able to come back to the United States and I think that's

9      something your Honor should take into consideration.

10         I think all of those points along with the points I

11     raised in our original submission and the amended one warrant a

12     sentence of time-served, Judge.  I hope your Honor will take

13     all of that into consideration.

14         Thank you.

15         THE COURT:  Thank you very much.

16         Mr. Njemanze, if you would like to speak to me now in

17     connection with your sentencing I would be happy to hear from

18     you.  You are not obligated to speak with me but you are

19     invited to do so.  And, if you do speak with me, I will take

20     very seriously what you have to say.  What I will ask you, sir,

21     is that if you are speaking that you speak louder and slower

22     than you think you need to so that everyone in this courtroom

23     can hear.

24         Would you like to be heard, sir?

25         THE DEFENDANT:  Yes, your Honor.

JC95njeS                      sentence

1              THE COURT:  I will hear from you now.  Thank you.  You

2     are welcome to be seated or stand, however you are more

3     comfortable.

4              THE DEFENDANT:  I will stand.

5              Thank you, your Honor.  Thank you everyone.  Forgive

6     me if I get emotional at some point.

7              THE COURT:  It is very understandable, sir.

8              THE DEFENDANT:  So, I moved to this country four years

9     ago for the reason of seeking greener pastures, trying to

10    assist my family because it was a tough time in Nigeria at that

11    point.

12             So, after that, getting here, I have always been a

13    patient person, you know, but at some point I think I lost my

14    ability to be patient because I really need that to assist to

15    do a lot.  And then I received a call four years ago, the call

16    has changed my life and, honestly, if I could take back the

17    hands of time I would not have received that call for any

18    reason.  What I did was utterly disgusting.  There is no

19    excuse.  And this brought me closer than I could ever imagine

20    to God and I have asked God for forgiveness and I hope I will

21    be forgiving him also.

22             I have my father who will be so disappointed because

23    he raised me better.  I have someone also that I let down.  To

24    all of you, I am sorry.

25             THE COURT:  Take your time, sir.  Don't worry.  We can

JC95njeS                              sentence

1    pause.

2              THE DEFENDANT:  I'm sorry, your Honor.

3              THE COURT:  That's okay.

4              THE DEFENDANT:  Whatever punishment I have at this

5    time, it's -- it's whatever it is, no problem.  Like I said, I

6    have asked God for forgiveness and I hope you will forgive me

7    also.

8              Thank you very much.

9              THE COURT:  Thank you very much.

10             What I am going to do now is what I do in all

11   sentencings or almost all sentencings and that is to take a

12   break so that I can think about everything that's just been

13   said here, think about the written materials I have received,

14   and come back with what I hope is the fairest sentence.  So, I

15   will be away for about 5 for 10 minutes, I will come back as

16   soon as I can, and I will ask for your a patience during that

17   time.

18             Thank you all very much.

19             (recess)

20             THE COURT:  Ms. Murray, it turns out that I did have a

21   couple of questions that I came to while I was preparing so let

22   me ask this question first, please.

23             With respect to the government's restitution order and

24   schedule of victims there is a little bit of disconnect between

25   the name listed in the presentence investigation report and the

JC95njeS                        sentence

1   name that is listed as the payee.  I imagine maybe there are

2   two sides of the same transaction but may I hear from you on

3   that, please?

4           MS. MURRAY:  Yes, your Honor; that's correct.

5           So, Susan bell is the name of the individual.  The

6   payee that is listed in the restitution order is the loan

7   company or the mortgage company that is responsible for the

8   amount of money that was paid, for the $45,000, because it was

9   a transaction Ms. Bell was making through a loan officer for a

10  home loan, that is the actual victim that is responsible for

11  the amount of that money.

12          THE COURT:  Should I amend the presentence

13  investigation report to make clear that that restitution should

14  be payable to True Home Solutions, LLC, instead of to the Clerk

15  of the U.S. District Court for disbursement to her?

16          MS. MURRAY:  Yes, your Honor.  We would appreciate

17  that.  Thank you.

18          THE COURT:  Okay.  So, Mr. Spodek, you don't a

19  disagree, sir; is that correct?

20          MR. SPODEK:  No.  Absolutely not.

21          THE COURT:  Terrific.  I will make that change at page

22  25 of the presentence investigation report.  That was one

23  source of confusion.

24          Ms. Murray, just another question for you, please, and

25  perhaps the case agent might be useful on this as well.  What I

JC95njeS                         sentence

1   saw in the government's submission and in the presentence

2   investigation report were references to Mr. Njemanze sending

3   numerous text messages to Mr. Ezeji and to other members of the

4   conspiracy, and I guess the issue for me is I don't know what

5   numerous means.  I can tell you that there are three that are

6   listed in the presentence investigation report and three could

7   be numerous but there could be tens, there could be hundreds,

8   there could be thousands of messages in this six-month time

9   frame and I am trying to get a sense of the volume of messages

10  or volume of communications that Mr. Njemanze had either with

11  members of the conspiracy whom I have met, or with individuals

12  whom you understand to be members of the conspiracy outside of

13  the group in the indictment.

14          MS. MURRAY:  Yes.  Just a moment, please?

15          THE COURT:  Yes.

16          (Counsel conferring)

17          MS. MURRAY:  Your Honor, my understanding with respect

18  to the electronic evidence is we have on the order of hundreds

19  of WhatsApp messages between the defendant and Ifeanyi Ezeji.

20  Certainly not tens, it is more in the magnitude of hundreds

21  relating to this conspiracy.

22          With respect to electronic communications with other

23  co-conspirators, from the electronic evidence that the

24  government has been able to retrieve through search and seize

25  in the course of the investigation, because we had Ifeanyi

JC95njeS                          sentence

1   Ezeji's cell phone we don't have, as I understand, the

2   defendant's communications with other members of the conspiracy

3   but it is our understanding, both through the investigation,

4   our view of the defendant's role and then statements he made to

5   us during proffers, that he engaged in electronic

6   communications with other members of the conspiracy including

7   in countries like Nigeria.

8         THE COURT:  Yes.  I shouldn't know about the proffer

9   stuff and I therefore won't, but what you are saying is you

10   haven't done as deep a dive into those messages because you had

11   the evidence you needed from Ifeanyi Ezeji, yes?

12         MS. MURRAY:  That's correct; and because the defendant

13   chose to waive indictment so we didn't complete our

14   investigation, necessarily, with respect to this defendant.

15         THE COURT:  Thank you very much.

16         Mr. Spodek, if you want to be heard on this issue I

17   would be happy to hear from you, or you may just agree with

18   what the government has said.

19         MR. SPODEK:  No.  I have nothing to add, your Honor.

20   Thank you.

21         THE COURT:  Okay.  What I am going to do now is to

22   describe the sentence that I intend to impose but I will give

23   each side an opportunity to make legal objections before the

24   sentence is actually imposed.

25         We have spoken this afternoon about a number of

1    purposes of sentencing and they are set forth in

2    Section 3553(a) of Title 18 of United States Code and I will

3    just list a few of them that come into play or that are

4    particular focus for me in this case.

5           I must consider the nature and circumstances of the

6    offense.  I must consider the history and characteristics of

7    Mr. Njemanze.  I must consider the need for the sentence

8    imposed to reflect the seriousness of the offense, to promote

9    respect for the law, to provide a just punishment for the

10   offense, to afford adequate deterrence to criminal conduct, to

11   protect the public from further crimes by Mr. Njemanze, and to

12   provide him with needed educational and vocational training,

13   medical care, or other correctional treatment in the most

14   effective manner.  I must consider the sentencing guidelines

15   and I will speak about them momentarily.  I must consider the

16   need to avoid unwarranted sentence disparities among similarly

17   situated defendants.  And I must consider the need to provide

18   restitution to the victims.

19          Proceeding now to the guidelines calculations, I

20   replicate those in the presentence investigation report.  The

21   base offense level is 8.  There is an eight-level enhancement

22   for the amount of loss, and a two-level enhancement because the

23   conviction is under Section 1956 of Title 18 of United States

24   Code.  There is a three-level reduction for acceptance of

25   responsibility and that yields an adjusted offense level of 15.

1      Mr. Njemanze has no criminal history points and is

2  therefore in Criminal History Category I and his resulting

3  guidelines range is 18 to 24 months' imprisonment.  The defense

4  has sought time-served or a below guidelines sentence.  The

5  probation office has recommended a sentence at the bottom of

6  the range.  The government has asked for a sentence within the

7  applicable guidelines range of 18 to 24 months.

8      Let me say that it mattered to me, the breadth and the

9  length and the importance of Mr. Njemanze's conduct in this

10  case and that is why I was asking the government because, to

11  me, there are folks in the case who might have been involved in

12  a more limited capacity or in other cases that there may be

13  individuals who are involved in perhaps passing one e-mail or

14  setting up one account and I think they are qualitatively

15  different from someone who is exchanging hundreds of e-mails

16  with the person who is at the top of the charged conspiracy in

17  my case and is also in communication with folks in other

18  countries.  And, each of these e-mails was part of a fraud that

19  resulted in real losses to a number of victims.

20      I do appreciate very much and understand

21  Mr. Njemanze's efforts at accepting responsibility.  I

22  understand and appreciate his participation in the judicial

23  removal order.  I understand his meetings with the government.

24  For me, however, these do not counsel in favor of a time-served

25  sentence or even a non-guideline sentence but they counsel in

JC95njeS                    sentence

1    favor of a sentence at or towards the bottom of the applicable

2    guidelines range.

3          Again, I am concerned about the sheer amount of time

4    and effort -- time being six months and many occasions in which

5    he could have stopped; and effort being his criticality to the

6    scheme insofar as he was able to put Mr. Ifeanyi Ezeji in

7    contact with individuals here and in other countries who were

8    very much involved in the losses.

9          I have considered, as well, while I don't think that

10   this is a case of specific deterrence, I do think this is a

11   case of general deterrence.  I don't think it is appropriate,

12   for example, to give a serious below guideline sentence or a

13   serious downward variance under the guidelines just because

14   someone has overstayed their visa and has engaged in fraud and

15   is willing to return home.

16         Recognizing the degree to which Mr. Njemanze has

17   accepted responsibility but counter-balancing that by the scope

18   of the fraud and the significance to the victims, I am imposing

19   a term of 18 months' imprisonment and I am ordering that that

20   term be followed by a term of period of supervised release of

21   three years with the mandatory standard and special conditions

22   of supervised release.

23         I am not ordering a fine.  I am ordering restitution

24   in the amount of $45,745.74, and forfeiture in the amount of

25   $103,359.24.  And, I am obligated to impose a mandatory special

JC95njeS                          sentence

1    assessment of $100.

2              Ms. Murray, my understanding is that the difference

3    between restitution and forfeiture is that forfeiture was the

4    amount attributable to Mr. Njemanze's conduct, whereas the

5    restitution was the specific victim that you were able to

6    identify?

7              MS. MURRAY:  That's correct, your Honor.

8              THE COURT:  Thank you.

9              Ms. Murray, is there any reason why I may not impose

10   that sentence?

11             MS. MURRAY:  No, your Honor.

12             THE COURT:  Mr. Spodek, is there any reason why I may

13   not impose that sentence?

14             MR. SPODEK:  No, Judge.

15             THE COURT:  All right.  Mr. Njemanze, please rise.

16   Sir, after considering all of the factors that are set forth in

17   Section 3553(a) of Title 18 of the United States Code, I find

18   that a term of 18 months' imprisonment is sufficient but not

19   greater than necessary to comply with all of the purposes of

20   sentencing.  I will order that that term of imprisonment be

21   followed by a term of three years of supervised release

22   although, as a practical matter, that may be rendered a

23   academic if you were to be removed from this country.

24             I am not imposing a fine.  I am imposing restitution

25   and forfeiture in the amounts that I have just listed, and I am

JC95njeS                        sentence

1    obligated to impose a $100 special assessment.

2              Do you understand that, sir?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Please be seated, sir.

5              Mr. Njemanze, to the extent that you have not waived

6    this in any plea agreement that you have with the government,

7    you have the right to appeal from your conviction and from your

8    sentence.  If you are interested in appeal, I would ask you to

9    speak with Mr. Spodek at your earliest opportunity.  You have,

10   generally speaking, two weeks from the date of entry of the

11   judgment of conviction, and it is my expectation that that

12   judgment will be entered tomorrow or the day after.

13             So, if appeal is something in which you are

14   interested, please, speak with your attorney.

15             Do you understand, sir?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Spodek, do you or your client have a

18   place of designation that you would like me to recommend to the

19   Bureau of Prisons?

20             MR. SPODEK:  No, Judge.

21             I would ask your Honor to consider giving Mr. Njemanze

22   time to self-surrender, if that's possible, considering his

23   agreement to deportation and the 18-month term of imprisonment.

24             THE COURT:  Does the government have a position with

25   respect to that?

JC95njeS                    sentence

1           MS. MURRAY:  Your Honor, the government doesn't have a

2     position.  It is my understanding that where there is a

3     judicial removal order at the time of sentencing the defendant

4     should be remanded or, in the alternative, will be taken into

5     ICE custody and that removal order will be effective

6     immediately.  That is my understanding.  That said, I don't see

7     anyone here who could take the defendant into custody so I'm

8     not really sure logistically --

9           THE COURT:  Should I then?

10          MS. MURRAY:  -- of the self-surrender situation.

11          THE COURT:  Should I then refrain from executing the

12    judicial removal order?  If there weren't that, what would the

13    government's position be?

14          MS. MURRAY:  I'm candidly not sure, your Honor.  I

15    don't know the mechanics of how these two interplay.

16          THE COURT:  Let me ask the question more precisely.

17          Had you not signed the judicial removal order today,

18    what would your position be on behalf of your office?

19          MS. MURRAY:  Had I not signed it today my position

20    would be that there is no objection to a self-surrender

21    situation for this defendant.

22          THE COURT:  Okay.  Thank you.

23          I will allow him to self-surrender and I will refrain

24    from filing the judicial removal order for some period of time.

25          Mr. Spodek, there is no recommendation for place of

JC95njeS                          sentence

1    designation, sir.

2              MR. SPODEK:  Judge, he is currently residing in Orange

3    County.  If your Honor would be inclined to designate a

4    facility in that district, certainly that would be preferable.

5              THE COURT:  All right.

6              MR. SPODEK:  That's California, your Honor.

7              THE COURT:  As distinguished from New York.

8              MR. SPODEK:  Just making clear.

9              THE COURT:  That is fine, sir.  I did figure that out

10   based on some of the exhibits that you had submitted to me.

11             MR. SPODEK:  Yes.  Thank you, your Honor.

12             THE COURT:  Sir, as well, my recollection is -- and

13   Ms. Murray you may have a different understanding -- it takes

14   about six weeks or so to actually get a designation

15   accomplished so I was going to suggest surrender in two months,

16   in 60 days.

17             Is there any objection to that, sir?

18             MR. SPODEK:  No, Judge.  That would be ideal.

19             THE COURT:  Okay.

20             And Ms. Murray, is there objection to that with the

21   caveat you have already given me?

22             MS. MURRAY:  No, your Honor.  With that caveat, no.

23             THE COURT:  I understand.

24             Ms. Noriega, may I have date in two months, please?

25             THE DEPUTY CLERK:  Friday, February 7, before 2:00

JC95njeS                          sentence

1   p.m.

2              THE COURT:  Ms. Murray, are there any open counts?  I

3   don't believe there are any but I will hear from you if there

4   are.

5              MS. MURRAY:  I don't believe so, your Honor; no.

6              THE COURT:  From your perspective is there anything

7   else that I need to do today?

8              MS. MURRAY:  Not today, your Honor.  Thank you.

9              THE COURT:  Thank you.

10             Mr. Spodek, is there anything else, from your

11  perspective, that I need to do this afternoon?

12             MR. SPODEK:  No, your Honor.  Thank you very much.

13             THE COURT:  All right.  Thank you very much.

14             Mr. Njemanze, I wish you well, sir, and my expectation

15  is given the judicial order of removal, I will not be seeing

16  you again but I wish you good luck in all of your future

17  endeavors.

18             Thank you, sir.

19             THE DEFENDANT:  Thank you, your Honor.

20             THE COURT:  We are adjourned.  Thank you.

21                              o0o

22

23

24

25